IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TREGAN RAMBUS,<br><br>Defendant. | Case No. 3:21-cr-36<br><br>**MEMORANDUM IN SUPPORT OF SENTENCING** |

# I. INTRODUCTION

[1.]   The Defendant, Tregan Rambus (hereinafter "Tregan") was charged with multiple charges by Superseding Indictment including: Count 1, Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substance in violation of 21 U.S.C. § 846, 21 U.S.C. § 853, and 28 U.S.C. § 2461 Forfeiture Allegation, Count 15, Possession with Intent to Distribute a Controlled Substance (Fentanyl Mixture) in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C).

[2.]   On or about September 30, 2021, the Defendant was arrested and an initial appearance was held. The Defendant was released on or about October 1, 2021 on conditions. On or about October 8, 2021, the Defendant appeared for an arraignment to the counts in the information. Mr. Rambus entered "not guilty" pleas and was ordered to remain on bond under conditions. To the knowledge of undersigned counsel, Mr. Rambus has had no problems or concerns while serving the terms of his pre-trial and/or pre-sentence release with the exception of one (1) positive drug test.

[3.]   A plea agreement was filed between the Plaintiff, United States of America, and the Defendant.  The plea agreement called for Mr. Rambus to plead guilty to counts 1 and 15. Under the terms of the agreement, the parties agreed under the advisory sentencing guidelines that the highest base level is 30 with the following adjustments: (1) a two level reduction for acceptance of responsibility; and, (2) a one level downward adjustment for timely notification of the intent to enter a guilty plea. The plea agreement further called for the dismissal of any remaining counts against Mr. Rambus.

[4.]   Tregan is free to recommend any sentence including a departure or variance within the guideline range that he believes is appropriate.

[5.]   Tregan is requesting time served, followed by a period of supervised release.

## II. FACTUAL BACKGROUND

[6.]   Mr. Rambus has been on pre-trial supervised release for approximately twenty-four (24) months from September 22, 2021 until present for the federal charges. As noted above, Tregan has had virtually no issues while on pre-trial/sentence release.  Based upon the PSR, since his arrest, Tregan has mostly kept to himself and has kept away from negative influences.

[7.]   Tregan is a twenty-four (24) year old man born in Detroit, Michigan and he has no dependents.  Tregan lives with his adoptive mother and adoptive siblings. Tregan had minimal contact with his biological mother and father growing up, while reconnecting with them in later life.

[8.]    Tregan began using marijuana when he was 18. While on pre-trial release he tested positive one time for marijuana but otherwise has remained clean. Up until the time of his arrest for this offense, he was using marijuana daily.

[9.]    There is evidence that Tregan has a learning disability and/or effects from lead poisoning at a young age. According to the World Health Organization, lead poisoning can have several adverse effects on young children.

> Children who survive severe lead poisoning may be left with permanent intellectual disability and behavioural disorders. At lower levels of exposure that cause no obvious symptoms, lead is now known to produce a spectrum of injury across multiple body systems. In particular, lead can affect children's brain development, resulting in reduced intelligence quotient (IQ), behavioural changes such as reduced attention span and increased antisocial behaviour, and reduced educational attainment.

https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health#:~:text=Lead%20also%20causes%20long%2Dterm,birth%20and%20low%20birth%20weight, last visited October 4, 2023. For Tregan, his mother attributes his early lead poisoning to Tregan's poor decision to be involved in this case and his association with unsavory characters.

[10.]   Tregan has a minimal criminal history with one other arrest at the age of 21. He was given a deferred imposition of sentence at that time.

### III. OFFENSE LEVEL

[11.]   The counts to which Tregan pled guilty has a base level of 30. Under the plea agreement, the United States and the Defendant agreed to a three-level downward adjustment based on Tregan's willingness to accept responsibility, for a total level of 27 with the PSIR drafted calculating on offense level of 27 as well.

Considering a criminal history category of I and an offense level of 27, the guideline range for Tregan is 70-87 months.

## IV. FACTORS FOR CONSIDERATION BY THE COURT

[12.]   Downward Departure for Mitigating Role.

[13.]   Tregan urges the Court for a downward departure pursuant to United States Sentencing Guideline § 3B1.2.  Based upon information and belief, Tregan was a minimal participant in the foregoing drug conspiracy.  Tregan asserts that the evidence (discovery) reveals that Tregan made a sole trip to North Dakota to sell drugs for someone he considered to be a friend.  As such, Tregan is a minimal participant.  The commentary to the Rule provides:

> Applicability of Adjustment.—
> (A)   Substantially Less Culpable than Average Participant.—This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity.

Here, the discovery and PSR reveal that Tregan sold narcotics on only one occasion and the individuals with him were arrested on that occasion, and he was shortly detained thereafter. PSIR, ¶¶ 11-12.  Coupled with Tregan's conditions based upon his lead poisoning, urges the Court to grant a departure of minus 4 as Tregan was a minimal participant. Based upon this, Tregan urges the Court that the offense level should be 23 as opposed to 27.   The guideline range would then be 46-57 months.

[14.]   Title 18 USC 3553 Factors.

[15.]   Title 18, United States Code Section 3553(a) provides that the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the

4

purposes set out in paragraph (2) of that subsection. Section 18 U.S.C. 3553(a) provides the following requisite seven factors to be considered by the Court in determining the particular sentence to be imposed:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;

2. The need for the sentence imposed –

    a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. To afford adequate deterrence to criminal conduct;

    c. To protect the public from further crimes of the defendant; and

    d. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. The kinds of sentences available;

4. The kinds of sentence and the sentencing range established for –

    a. The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced, or

    b. In the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;

5. Any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

6. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7. The need to provide restitution to any victims of the offense.

<u>Id.</u> 18 U.S.C. section 3582(a) requires that the court consider the factors set out in 18 U.S.C. 3553(a), recognizing "that imprisonment is not an appropriate means of promoting correction and rehabilitation." <u>Id.</u> An analysis of the applicable factors in this case is set forth below.

1. **<u>The Nature of the Offense and History and Characteristics of the Defendant</u>**

    [16.] Except as set forth in the objections, Tregan does not dispute the facts as set forth in the PSR regarding the underlying charges.

    [17.] As noted above, Tregan urges this court for a departure of 4 levels based on his minimal role in the offenses.

    [18.] Mr. Rambus is not requesting that the Court excuse his behavior, only that his past be considered in sentencing. Tregan has done well since his release. He has maintained sobriety, and has only had one violation (to the knowledge of the undersigned) while on pre-trial/pre-sentence release. Tregan understands the serious nature of the charges, and has been drug free for several years since his initial release.

    [19.] While the PSR notes that Tregan has not had employment for several months, Tregan has been motivated to isolate to stay out of trouble, and further has some learning disabilities which likely limit his ability to obtain gainful employment.

    [20.] As noted above, Tregan presents quite a unique factual situation due to his medical conditions. Based on the foregoing, Tregan would urge this Court to recognize that he is a good candidate to impose a variance from the guidelines, and impose a period of supervised release. Tregan has been on release far longer than

most similarly situated defendants to Tregan, nearly two (2) years. During that time, Tregan has worked to turn his life around. Tregan urges the Court to recognize that he should most certainly not be punished for his actions while on release. He has generally maintained sobriety, isolated himself – which includes dissociating with other individuals that might influence him to get in trouble, worked to find an occupation, and stayed out of any other trouble. In this case, the arrest alone was sufficient to show Tregan that he needed to change his life.

[21.] Based on all the foregoing, Tregan argues that the mandatory minimums imposed pursuant to 21 USC § 841(b)(1)(A) are not applicable in this matter. Tregan submits to this Court that a more appropriate sentence would be credit for time served, and supervised release. Alternatively, placement in a half-way house followed by supervised release of three (3) years. Although Tregan urges placement on supervised release, should a half-way house be ordered, Mr. Rambus requests half-way house placement in or near Detroit, Michigan.

## 2. The Need for the Sentence to Promote Certain Statutory Objectives.

### a. To Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment.

[22.] As set forth in the PSIR, one of Tregan's strengths is the fact he took responsibility for his actions and plead guilty in this case, because he in fact was guilty. Tregan has also expressed remorse for his actions. Tregan urges the Court to recognize that society would be better served if he were sentenced to a supervised where he can get both mental health treatment related to the circumstances

surrounding his childhood, as well as continue educational and/or vocational training to move toward being an independent person.

[23.] While Tregan has admitted to the allegations, the impact of his actions he was not likely aware of as, as pointed out by his mother that Tregan was believed to have lead poisoning as a child and is susceptible to suggestion by less savory individuals in his life. However, his mother has also reported that he has been isolating himself and dissociating with his old acquaintances. This reflects significant family support and insight, but also positive self-reflection and the ability of Tregan to understand the seriousness of the offense in relation to those he was associating with.

### b. The Need to Afford Adequate Deterrence of Criminal Conduct

[24.] As noted in the PSIR and above, Tregan does have some limitations based upon a diagnosis in his youth regarding likely ingestion of lead. In his youth, he had been on an Individual Education Plan (IEP). Despite the additional help, Tregan was only able to complete the ninth (9th) grade. In this case Tregan urges the Court to recognize that his poor choices in this matter are related to issues other than simply a desire to make money – the typical reason for a person to be involved in a matter such as this. Those that know him believe that his poor decisions are based in part on his medical condition. Tregan's criminal history is minimal, and he has done very well, to the knowledge of the undersigned, while on supervised release prior to sentencing.

[25.]   As noted above, Tregan has taken steps to limit his contact with his old acquaintances.  While on supervised release, the reports indicate that by his actions Tregan has continued in his law-abiding actions thus showing that Tregan has already has accepted his actions were wrong and been deterred from future criminal conduct.  There are instances where an arrest and supervised release accomplishes this factor, Tregan asserts that this is just such the case.

### c. The Need to Protect the Public From Further Crimes of the Defendant.

[26.]   Tregan urges the Court to recognize that his best chance at a continued reformed life is with the help of proper vocational training and supervision to assist him to learn to better cope as a functioning member of society.  Time served for both the incarceration as well as part of his pre-sentence release as well as a time of supervised release will permit him to continue his positive track of staying out of trouble and avoiding contact with negative associates.  A period of incarceration may likely only teach a young man with minimal criminal history bad habits, worse associations, and possibly lead to a life of crime.

### d. Defendant's Need for Vocational Training and Other Correctional Treatment in the Most Effective Manner

[27.]   As set forth in the PSIR, Tregan does not have his high school diploma nor does he have any college education.   He would like to get his GED and go back to school to possibly learn various craftsmanship and home improvement skills.  Undersigned counsel submits that this is the best option for Mr. Rambus to keep him out of trouble in the future.

[28.] Based on the foregoing, Tregan submits supervised release would be appropriate.

### 3. Types of Sentences Available and   4. Range Established

[29.] In this case, the Court may impose a term of supervised release as well as for fines and fees. At this time, Tregan does not qualify for probation as stated in his PSIR. Tregan requests, as is supported by all items set forth above, a period supervised release would be best suited for him in order to rehabilitate himself and get on a path toward healthy living and positive meaningful contributions to society.

### 5. Policy Statements by Sentencing Commission

[30.] There are no current policy statements issued by the Sentencing Committee which would affect the sentencing of Mr. Rambus unless already noted herein.

### 6. Avoiding Unwarranted Sentence Disparities

[31.] There are many co-defendants in this case ranging from those in charge to those who were "runners." Tregan was considered to be on the low end of the hierarchy of this alleged conspiracy, not having any knowledge of the workings of it. Based upon information and belief, Co-Defendants Weston Baker, Sidrick James Tootosie Baker, and Ethan Youngbird, were all in a similar situation of the hierarchy, or even higher than that of Mr. Rambus. They all received sentences for time served with supervised release. Thus, Mr. Rambus's request is in-line with the other Co-Defendants of a similar hierarchy as him in the case.

[32.] Based on the foregoing, Tregan is requesting time served followed by a period of supervised release.

## 7. Provision of Restitution to Victims

[33.] There is no amount of restitution set forth in the Presentence Investigation Report as to Tregan, and he does not dispute such a restitution provision.

## 8. Factors that may Warrant a Sentence Outside of the Advisory Guideline System-Variance.

[34.] This issue will be addressed elsewhere.

[35.] **V. CONCLUSION**

[36.] There is no longer a presumption that the advisory guidelines range is the correct sentence. See United States v. Booker, 543 U.S. 220 (2005). Therefore, Tregan, by and through undersigned counsel, is requesting a period of incarceration, with credit for time served in this and the corresponding state case followed by supervised release.

[37.] In this case, Tregan is requesting a downward departure as well as a variance from the Sentencing Guideline recommendations. He has taken responsibility for his actions and he has already spent time on supervised release and he has shown that he can complete the same and stay out of further legal problems.

[38.] Based on the foregoing, Tregan requests a period of supervised release.

Dated this 6th day of October, 2023.

                        **JACKSON, THOMASON, WELDER**
                          **& ARTHURS, INC.**
                        *Attorneys for Defendant*
                        400 East Broadway Avenue, Suite 51
                        Bismarck, ND 58501
                        Phone: (701) 751-4847
                        Fax: (701) 751-4845
                        Email: thomas@bismanlaw.com


                        */s/ Thomas M. Jackson*
                        By: Thomas M. Jackson (ND ID 05947)